# In the United States Bankruptcy Court

## for the Northern District of Iowa

---

| | |
|---|---|
| LEONARD L. CLARK JR. and NIKKI CLARK | Bankruptcy No. 00-02309M |
| *Debtor(s).* | Chapter 7 |

---

| | |
|---|---|
| LEONARD L. CLARK JR. and NIKKI CLARK | Adversary No. 00-9217M |
| *Plaintiff(s)* | |
| vs. | |
| EDUCATIONAL CREDIT MANAGEMENT CORP. assignee of Nebraska Student Loan Program | |
| *Defendant(s)* | |

---

### MEMORANDUM DECISION

---

Debtor Leonard Clark[1] seeks discharge of his debt to Educational Credit Management Corporation, assignee of Nebraska Student Loan Program. Trial of this core proceeding took place January 8, 2002 in Mason City. James P. Walters appeared as attorney for Leonard Clark. Christopher C. Foy appeared as attorney for Educational Credit Management Corporation, the assignee of Clark's debt to Nebraska Student Loan Program.

Leonard L. Clark, Jr. and his spouse Nikki filed their chapter 7 petition on September 11, 2000. At the time, he was indebted on two student loans which he had obtained from the Nebraska Student Loan Program. His promissory notes to the Program have been assigned to Educational Credit Management Corporation (hereinafter "ECMC"). He asks that his debts to ECMC be discharged because excepting them from discharge would impose an undue hardship on him and his spouse.

Clark is 51 years old. Nikki Clark is approximately the same age. Clark is a feed truck driver for Heartland Pork Enterprises. He delivers feed to hog confinement locations in parts of Iowa. Nikki Clark is not employed. The couple rents a two-bedroom home in Iowa Falls. They have no dependents.

In 1989, Clark began obtaining student loans from the Nebraska Student Loan Program in order to help finance his daughter's college education. He obtained five loans. He has repaid three. The total principal balance on the two loans at issue is $8,726.00. With accrued interest, the total indebtedness as of September 12, 2001 was $10,590.00. Clark defaulted on the loans in 1997. Prior to default, the monthly payments on the two loans were $61.00 and $68.00 respectively.

Clark regularly works 50 hours per week for his employer. He is paid $11.20 per hour for the first 40 hours and $16.80 per hour for time worked in excess of 40 hours. His net take-home pay is generally

$2,613.00 per month. Clark has worked at other jobs for other employers in the sales and transportation industry. He earned $41,854.00 in 1999. It is likely that his earnings for the foreseeable future will approximate his present wages. Clark says that his spouse has not been able to find any employment in Iowa Falls and that it is not economically feasible for her to seek employment outside the town where they live. She has some "back problems."

Despite the discharge entered in this case, Clarks remain liable to the United States Internal Revenue Service and to the State of Iowa for unpaid income taxes. The IRS offset Clarks' 2000 tax refund, applying it against its claim. Also, Clark owes approximately $6,000.00 on a loan secured by one of the couple's two cars. The debt against the car will be paid off in approximately one and one-half years. The other car, which is driven primarily by Nikki Clark, is unencumbered by any liens. Clarks owe approximately $500.00 in back utility bills and approximately $500.00 in medical bills. Clark is paying the medical bills off at the rate of $40.00 per month. Clarks' regular monthly expenses are as follows:

| | |
|---|---:|
| rent | $633.00 |
| car loan payment for 18 months | $559.00 |
| water, sewer, trash | $55.00 |
| phone and internet service | $50.00 |
| car insurance | $65.00 |
| utilities | $180.00 |
| car fuel | $80.00 |
| groceries | $400.00 |
| cable tv | $12.00 |
| clothes | $40.00 |
| unpaid medical bills | $40.00 |
| health insurance | $10.00 |
| cigarettes and nicotine patches | $225.00 |

Clarks' medical insurance costs them $190.00 per month through Clark's employer. It is a pretax deduction from his wages. Therefore, Clark's net pay of $2,613.00 reflects the payment for health insurance. Because Clark expects that soon the cost will increase by $10.00 per month, I have shown the health insurance expense as $10.00, which is only the amount of the increase. Mr. and Mrs. Clark are each long-time smokers. They have been spending $10.00 per day or $304.00 per month on cigarettes. Clark is attempting to quit. He estimates that the cost of his nicotine patches and his wife's cigarettes is now $225.00 per month.

Clarks' regular monthly expenses, as shown above, total $2,349.00. Subtracting that figure from Clark's monthly take-home pay of $2,613.00 leaves $264.00 of what might be called discretionary income.

Clark asks that his debts to ECMC be discharged. Only Clark is liable on the two student loans. His daughter, who is now in graduate school, is not.

Section 523 of the Bankruptcy Code provides that

A discharge under section 727 . . . of this title does not discharge an individual debtor
from any debt-

. . .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a
governmental unit, or made under any program funded in whole or in part by a
governmental unit or nonprofit institution, or for an obligation to repay funds received as
an educational benefit, scholarship, or stipend, unless excepting such debt from discharge
under this paragraph will impose an undue hardship on the debtor and the debtor's
dependents.

11 U.S.C. § 523(a)(8). Two decisions in this district have concluded that the exception to discharge
found in section 523(a)(8) does not apply to non-student co-obligors of educational loans.
Northwestern University Student Loan Office v. Behr (In re Behr), 80 B.R. 124 (Bankr. N.D. Iowa
1987); Zobel v. Iowa College Aid Commission (In re Zobel), 80 B.R. 950 (Bankr. Iowa 1986)(Wood,
J., sitting by designation). Courts are split over this issue. See In re Pelkowski, 990 F.2d 737, 738 and
nn. 1, 2) (3rd Cir. 1993). The two existing decisions in this district hold the minority view.

There are no reported decisions in this district as to whether the discharge exception of section 523(a)
(8) applies to an educational loan made to the parent of a student when the parent is the sole obligor
on the note. There are a significant number of cases that hold that it does. See, e.g., Kentucky Higher
Education Assistance Authority v. Norris (In re Norris), 239 B.R. 247 (M.D. Ala. 1999); Education
Resources Institute, Inc. v. Wilcon (In re Wilcon), 143 B.R. 4 (D. Mass. 1992); Owens v. Nebraska
Higher Education Loan Program, Inc. (Matter of Owens), 161 B.R. 829 (Bankr. D. Neb. 1993); Webb
v. Student Loan Funding Corp. (In re Webb), 151 B.R. 804 (Bankr. N.D. Ohio 1992); Hammarstrom
v. Education Resources Institute, Inc. (In re Hammarstrom), 95 B.R. 160 (Bankr. N.D. Cal. 1989).

I agree with these decisions. Counsel for plaintiffs does not argue otherwise. The parties have
stipulated in their joint pretrial statement that the loans in question are educational loans within the
meaning of 11 U.S.C. § 523(a)(8). The only question presented for determination is whether
excepting these loans from discharge would impose an undue hardship on Clark and his spouse. The
burden of proof on this issue is on the debtor, Mr. Clark.

The test for undue hardship in this circuit requires consideration of the totality of the debtor's
circumstances including "special attention to the debtor's current and future financial resources, the
debtor's necessary reasonable living expenses for the debtor and the debtor's dependents, and any
other circumstances unique to the particular bankruptcy case." Andresen v. Nebraska Student Loan
Program, Inc. (In re Andresen), 232 B.R. 127, 140 (B.A.P. 8th Cir. 1999)(citing Andrews v. South
Dakota Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981)). The court must
determine "whether there would be anything left from the debtor's estimated future income to enable
the debtor to make some payment on his/her student loan without reducing what the debtor and
his/her dependents need to maintain a minimal standard of living." In re Andresen, 232 B.R. at 139
(citing In re Wegfehrt, 10 B.R. 826 (Bankr. N.D. Ohio 1981). The debtor must show that he has done
everything possible to maximize his income and to minimize his living expenses. Long v. Educational
Credit Management, Corp. (In re Long), ___ B.R. ___, 2002 WL 24357 at *4 (B.A.P. 8th Cir. Jan. 10,
2002). The court must apply the undue hardship analysis to each of the loans separately. In re
Andresen, 232 B.R. at 137.

I find that the debtor has failed to prove that excepting these educational loans from discharge would impose an undue hardship on him and his spouse. Despite the fact that he has earned greater income in previous jobs, it is likely Clark's present wage level will continue for the foreseeable future, although perhaps with some cost of living increases. Clark's take-home pay is $2,613.00 per month. This wage provides for more than a minimal standard of living. The couple lives in a two-bedroom house in Iowa Falls. They pay significant rent--$633.00 per month. They obtained this housing after they had filed bankruptcy. The couple has two motor vehicles, one of which was purchased through a loan since bankruptcy. Their car loan payment is $559.00. The couple has health insurance. There is no evidence that either debtor has any serious medical problems. Both debtors smoke cigarettes. Mr. Clark is attempting to quit. The cost of nicotine patches which he uses to help him quit and the cost of cigarettes for Mrs. Clark total $225.00 per month. They are able to pay this out of discretionary income. There was no evidence presented that they are buying cigarettes instead of buying items crucial to a minimum standard of living. Mrs. Clark does not work. I find this to be her choice. I do not find credible Mr. Clark's explanation that his spouse is unable to find a job in Iowa Falls because the town is cliquish and jobs are obtained solely by one's personal connections. Clark has not shown that he has done everything possible to maximize income and to minimize expenses.

Using debtor's own figures and including all of debtors' expenses, debtors still have $264.00 of disposable income each month. The two student loan payments, prior to default, totaled $129.00 per month. Debtors have not seriously investigated any programs which would enable Mr. Clark to change the repayment terms on the notes.

I find that based on the totality of the circumstances, excepting these two student loans from discharge would not impose an undue hardship on Clark and his spouse. I conclude that Clark's student loan debts to Educational Credit Management Corp. should not be discharged and that his debts to Educational Credit Management Corp. are excepted from his discharge under 11 U.S.C. § 523(a)(8).

IT IS ORDERED that the complaint of Leonard L. Clark seeking discharge of his educational-loan debt to Educational Credit Management Corp. be dismissed with prejudice.

IT IS FURTHER ORDERED that the complaint of Nikki Clark against Educational Credit Management Corp. be dismissed. Judgment shall enter accordingly.

SO ORDERED THIS 18 DAY OF JANUARY 2002.

William L. Edmonds

U.S. Bankruptcy Judge

1. Nikki Clark is a named plaintiff in this proceeding. However, at the time of trial, it was agreed by counsel that she has no liability on either of the two loans in question. Her claim in this proceeding will be dismissed.